DCG  DJB/HMG: 2017R00587

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO.** GLR-21-0126 |
| | * | |
| **CRYSTAL JONES,** | * | (Wire Fraud, 18 U.S.C. § 1343; Willful |
| a/k/a "Crystal Powell-Jones," | * | Failure to Account For and Pay Over |
| | * | Tax, 26 U.S.C. § 7202; Forfeiture, 18 |
| **Defendant** | * | U.S.C. § 981(a)(1)(C), 21 U.S.C. |
| | * | § 853(p), 28 U.S.C. § 2461(c)) |
| | * | |
| | ****** | |

## INFORMATION

### COUNT ONE
### (Wire Fraud)

The U.S. Attorney for the District of Maryland charges that:

### Introduction

At times relevant to this Information:

1. Defendant **CRYSTAL JONES** ("**JONES**") and **Individual 1** were residents of Maryland.

2. JAG Professional Resources ("JAG"), a temporary employment agency, was a partnership doing business in Howard County, Maryland, among other places.

3. **JONES** was an owner and managing partner of JAG, which operated from at least 2012 through August 2017. As JAG's managing partner, **JONES** exercised control over every aspect of JAG's business, including JAG's finances.

4. **JONES** also controlled a PNC bank account ending x2006, which was located in Maryland and was held in JAG's name ("JAG PNC x2006").

5. **Individual 1**, **JONES's** relative, was a silent minority partner in JAG.

6. The City in Ohio was a municipal government located in Ohio that contracted with JAG for temporary employment services from in or about February 2013 until in or about February 2016.

7. Victim Lender 1 was a factoring company headquartered in Illinois.

8. Factoring was a means by which cash intensive businesses could obtain cash quickly and reliably by leveraging accounts receivable. JAG was a cash intensive business because JAG had to pay its temporary employees weekly or biweekly, but typically did not receive payment from JAG's clients until at least 30 days after services had been rendered. Consequently, JAG could be short of the cash flow needed to pay its employees each week, but its business model was theoretically profitable if all outstanding invoices were paid.

9. From in or about February 2013 to at least October 2016, Victim Lender 1 provided factoring services to **JONES** and JAG. During that time period, JAG sold its account receivables to Victim Lender 1 and, in return, JAG received from Victim 1 cash advances totaling approximately 90% of JAG's accounts receivables. Upon collection of the receivables (that is, upon receiving payments from JAG's clients on the outstanding invoices), Victim Lender 1 sent JAG the remaining 10% of the invoice that had been purchased, less fees Victim Lender 1 charged for its factoring services.

10. From March 2016 to in or about May 2016, **JONES** caused JAG to sell Victim Lender 1 false and fraudulent invoices totaling more than $350,000 for services that JAG had purportedly provided to the City in Ohio. In fact, JAG's relationship with the City in Ohio ended in or about February 2016.

**The Scheme to Defraud**

11. Between at least in or about October 2012 and in or about August 2017, in the District of Maryland and elsewhere,

**CRYSTAL JONES,**
a/k/a "Crystal Powell-Jones,"

knowingly and willfully devised and intended to devise a scheme and artifice to defraud Victim Lender 1 and to obtain money from Victim Lender 1, as well as other lenders, by means of materially false and fraudulent pretenses, representations, and promises ("the scheme to defraud").

### Manner and Means of Scheme to Defraud

It was part of the scheme to defraud that:

12. **JONES** misused JAG to obtain corporate and personal financing that benefitted **JONES**, her family members, and friends.

13. **JONES** created false and fraudulent paystubs purportedly issued by JAG so **JONES** could obtain loans for her own benefit and the benefit of others.

14. **JONES** created false and fraudulent invoices that purported to represent services that JAG had provided.

15. **JONES** sold false and fraudulent invoices to Victim Lender 1 as if they were legitimate accounts receivable.

16. **JONES** sent emails to representatives of Victim Lender 1 in which **JONES** falsely stated that payments on the false and fraudulent invoices were imminent to lull Victim Lender 1 into a false sense of security about the outstanding collections.

17. **JONES** appropriated the names, signatures, and personal identifying information of **Individual 1** and others for **JONES's** own benefit.

3

## The Charges

18.     On or about the date below, in the District of Maryland and elsewhere, the defendant,

**CRYSTAL JONES,**
a/k/a "Crystal Powell-Jones"

for the purpose of executing and attempting to execute the scheme to defraud, knowingly transmitted and caused to be transmitted in interstate commerce by means of wire communications, any writings, signs, signals, pictures, and sounds, as set forth below:

| Count | Date | Description of Wire |
|---|---|---|
| 1 | 5/12/2016 | A $47,666.65 Fed Wire transfer from Victim Lender 1, which originated outside of Maryland, and which was deposited into the JAG PNC x2006 account. |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNT TWO
### (Willful Failure to Account For and Pay Over Tax)

The U.S. Attorney for the District of Maryland further charges that:

1.  Paragraphs 1 through 17 of Count One are incorporated here.

### Introduction

2.  The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for enforcing and administering the tax laws of the United States, and collecting taxes owed to the United States. Among the taxes that the IRS administers are "employment taxes" or "payroll taxes," which includes federal income withholding taxes ("withholding taxes") and Federal Insurance Contribution Act taxes ("FICA taxes").

    a. In general, an employer must deduct and withhold income tax on the amount of wages paid to its employees and must pay over those withheld income taxes to the IRS. Federal income tax withholding is generally based on the number of allowances claimed by the employee on his or her W-4 Form.

    b. FICA taxes are comprised of two parts: First, old-age, survivor, and disability insurance, which is commonly referred to as "Social Security," and, second, health insurance, which is commonly referred to as "Medicare." Social Security taxes are used to fund retirement and disability benefits, while Medicare taxes are used to provide health and medical benefits for the aged and disabled.

3.  Employers are required to file with the IRS an Employer's Quarterly Federal Income Tax Return—Form 941 ("Form 941"), on a quarterly basis. The Form 941 is due at the end of the month following each end of the calendar quarter (April 30, July 31, October 31, and

5

January 31). The employer must report on the Form 941 the total amount of the employees' wages and any other compensation subject to withholding, the total amount of income tax withheld, the total amount of FICA taxes due, and the total tax deposits.

4. When the Form 941 is filed, employers are required to pay over to the IRS the employment taxes that the employer has withheld, along with the employers' share of the FICA taxes. The corporate official responsible for collecting, accounting for, and paying over the employment taxes is known as the "responsible person."

5. As the managing partner of JAG, **JONES** was responsible for collecting, accounting for, and paying over to the IRS all of JAG's payroll taxes.

6. From January 2014 to in or about October 2016, **JONES** withheld payroll taxes from the wages paid to JAG's employees. However, for the quarters ending March 31, 2014 to December 31, 2016, **JONES** and JAG failed to file with the IRS any Forms 941 accounting for the payroll taxes that had been collected.

7. Additionally, with the exception of one partial payment made in the second quarter of the 2015 tax year, for the 2014, 2015, and 2016 tax years (and the payroll quarters ending therein) **JONES** and JAG failed to pay over to the IRS any of the payroll taxes withheld from JAG employees.

8. The failure of **JONES** and JAG to account for and pay over payroll taxes to the IRS resulted in a tax loss to the United States of at least $523,244.38.

## The Charges

9. On or about the date below, in the District of Maryland and elsewhere, the defendant,

**CRYSTAL JONES,**
**a/k/a "Crystal Powell-Jones,"**

willfully failed to truthfully account for and pay over to the IRS the federal income taxes and FICA taxes withheld from JAG employees, which was due and owing to the United States of America, as set forth below:

| Count | Tax Quarter & Year | Quarter Ended | Filing/Payment Dates |
|---|---|---|---|
| 2 | Q2 2015 | June 30, 2015 | July 31, 2015 |

26 U.S.C. § 7202
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The U.S. Attorney for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction of the offense in Count One of the Information.

### Wire Fraud Forfeiture

2. Upon conviction of the offense alleged in Count One of this Information, the defendant,

**CRYSTAL JONES,**
**a/k/a "Crystal Powell-Jones,"**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes, or is derived from proceeds traceable to such offense. The property to be forfeited includes, but is not limited to, a money judgment of **at least $449,123.73 in U.S. currency** equal to the aggregate proceeds obtained by the defendant traceable to the scheme to defraud.

### Substitute Assets

3. If, as a result of any act or omission of any defendant, any of the property described above as being subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

   e.  has been commingled with other property which cannot be divided without difficulty,

the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), shall be entitled to forfeiture of any substitute property up to the value of the forfeitable property described above.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Date: April 26, 2021

              *Jonathan F. Lenzner /DJB*
              Jonathan F. Lenzner
              Acting United States Attorney